UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-4451 (1:04-cr-00385-LMB-1)

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

ALI AL-TIMIMI,

       Defendant-Appellant.

**APPELLANT'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION FOR REMAND OR, IN THE ALTERNATIVE, AN ORDER ALLOWING THE INCLUSION OF FBI DOCUMENT**

On June 29, 2015, the Court ordered the government to respond to the instant motion seeking a remand in light of the discovery of a new document from the National Archives and Records Administration (NARA) referencing "Squad IT-3" of the Washington Field Office (WFO) of the Federal Bureau of Investigation (FBI) (hereinafter the "Squad IT-3 document"). In the alternative, Dr. Al-Timimi moved for the government to be asked why this document should not be incorporated into the record on appeal. Appellee responded largely by addressing one basis for denying the discoverability of the Squad IT-3 document and offering a single line on the second question of including this document in the

1

appellate record. The government's response is facially inadequate and fails to address most of Defendant's arguments. Moreover, the fact that the Justice Department insists that Squad IT-3 is not discoverable under any legal basis offers a troubling insight into the conduct in this case.[1]

As discussed below, the government ignores the main arguments for the materiality of Squad IT-3 and fails to address clearly applicable precedent, such as the recent decision of this Court in *United States v. Parker*, 2015 U.S. App. LEXIS 10760 (4th Cir. June 25, 2015). Squad IT-3 is not only facially material to the case but also only *one* of the documents previously sought on remand and only obtained by counsel through independent means. The fact that this document could be produced in redacted form (and references potentially hundreds of other documents) should militate heavily in favor of a remand in this case. As to the alternative motion for incorporation of this document in the appellate record, its value is made obvious by the government's recurrent argument that the claim of undisclosed evidence is "speculative." There is nothing speculative about this document or those referenced in it. The virtual absence of argument by the government against inclusion of this document in the appellate record reflects the

---

[1] A remand in this case would also allow the lower court to address a number of documents that are still under review and not placed on the docket. As previously disclosed to this Court, these documents were discovered by defense counsel as missing this year and raised with the security officers who are seeking the completion of a renewed review for inclusion on the docket.

counterintuitive character of its position: an effort to exclude documents in order to maintain that any claim of withheld documents is speculative.

   I.   **THE GOVERNMENT MISREPRESENTS THE CLAIM OF MATERIALITY IN THIS CASE AS WELL AS THE CONTROLLING FEDERAL CRIMINAL DISCOVERY RULES**

The government spends most of the opposition discussing the discoverability of the Squad IT-3 document under Rule 16 as an investigatory report. Gov't Resp. To Mot. Remand 3-5; *cf. United States v. Johnson*, 2015 U.S. Dist. LEXIS 75298 (N.D. Cal. June 10, 2015) (discussing "disconcerting" effort of Justice Department to conflate the Rule 16 and *Brady* standards). The Rule 16 exception was not a basis for the prior denial of discovery by the District Court, which accepted that the standard should be read broadly. Op. (April 28, 2014) at 6. Even assuming the Squad IT-3 document is an investigatory report and, therefore, undiscoverable under Rule 16(a)(2), the government's argument that the document is exempt only prevails if Squad IT-3 is considered inculpatory rather than exculpatory. *See United States v. Fort*, 472 F.3d 1106, 1110 (9th Cir. 2007) (holding that investigatory reports (such as an FD-302) fall under the exemption unless exculpatory). This point is further made by the authority cited, but ignored, by Appellee. *See, e.g.*, *United States v. LiCausi*, 167 F.3d 36, 51 (1st Cir. 1999). While making passing reference to standards like *Brady*, the government avoids the obvious admissibility of the document under *Brady* and its progeny. Moreover,

the claim that Squad IT-3 is an investigatory document in this case is based solely on the government's unsupported characterization. This document was never reviewed by the lower court.[2] Indeed, the lower court acknowledged "that defendant faces the difficult prospect of specifying the nature of the material to which he does not have access." Op. at 16. The existence of the prior investigations into both Al Qaeda and Aulaqi are now known through Squad IT-3.

Squad IT-3 (and the hundreds of documents referenced therein) raises a classic example of the withholding of material evidence favorable to the accused in violation of the guarantee to due process and a fair trial. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *see Kyles v. Whitley,* 514 U.S. 419, 433-34 (1995) (discussing precedent). Under *Brady*, a defendant must show that favorable evidence was withheld and "material," by way of a "reasonable probability" that disclosure would have produced a different result at trial. *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). As this Court stated in *Parker*: "This standard does not require a showing that a jury more likely than not would have returned a different verdict. *Parker*, supra, at 15. Rather, the "reasonable probability" standard is satisfied if 'the likelihood of a different result is great enough to undermine confidence in the

---

[2] For years, the defense has objected that the prosecution has engaged in willful blindness of undisclosed material that has been easily located by the defense. The admission of the prosecution that it only reviewed this document after the instant motion is evidence of the wholesale failure of the prosecution to meet its discovery obligations.

4

outcome of the trial.'" *Id.* at 14-15 (quoting *United States v. Bartko*, 728 F.3d 327, 339 (4th Cir. 2013)). In this case, the evidence would not only show the prior unsuccessful effort to tie Dr. Al-Timimi to Al-Qaeda but it would also offer a concrete support for prior allegations of false testimony by key witnesses like Special Agent Ammerman and false representations by the prosecution.

Defendant laid out detailed and documented examples of the materiality of Squad IT-3, including its contradiction of specific statements made to the district court during the remand inquiries. First, much of the discussion below with the trial court concerned the existence and disclosure of prior investigations of Dr. Al-Timimi. In both pre-trial and post-remand hearings, the government denied the existence of such investigations and evidence. On remand, Assistant United States Attorney Gordon Kromberg answered affirmatively when directly asked to confirm the court's understanding that "the government insists that there was no material investigation of Timimi until 2003." In addition, Special Agent Ammerman testified that the investigation began in early 2003. (Trial Tr. 1337:6 (Apr. 11, 2005)); *see also* Dkt. No. 220, Hr'g Tr. 38:9-11, (Jan. 16, 2007). On its face, Squad IT-3 is evidence of a material investigation before 2003 and refers to hundreds of other potential material documents that could further undermine the government's false representations to the lower court.

Second, the government ignores the fact that it sought both in the original

search warrant and trial to associate Dr. Al-Timimi with Al-Qaeda. Squad IT-3 not only refers directly to a fruitless investigation of that connection but also refers to the very agents who would later draw such connection. The government disregards the fact that Ammerman repeatedly referenced Al-Qaeda and stated that Dr. Al-Timimi mirrored the views of the organization, associated with Al-Qaeda suspects, and used his position to get young Muslims to fight alongside Al-Qaeda. *See* Exhibit J (MacMahon Declaration).[3] Thus, the prosecution suggests that a document that directly relates to (1) the search of Dr. Al-Timimi's home, (2) the alleged conduct in the indictment, (3) the results of the investigation of Al-Qaeda associations, and (4) the testimony of these agents is not in any way discoverable in this trial. It is truly an argument that shocks the conscience.

Third, Defendant detailed the importance of the evidence related to Anwar al-Aulaqi in both pre-trial and post-trial (including remand) proceedings. This is the one area that the government offers opposing analysis. The government, however, advances one highly implausible argument to try to refute the materiality of the Aulaqi evidence. As discussed below, the Aulaqi evidence directly relates to

---

[3] The filing made in lieu of a bill of particulars also referenced Al-Qaeda repeatedly and stressed Dr. Al-Timimi's connection to "Foreign Terrorist Organizations." Gov't Response to Def.'s Supp. Pre-Trial Motions at 7 ("Attempting to conspire to provide material support and resources to foreign terrorist organizations") (Docket #23). Al-Qaeda was repeatedly raised in both the original indictment, see Dkt. No. 1 at 2-3, and the final superseding indictment. See Dkt. No. 47 at 2-3.

the impeachment of government witnesses, particularly Ammerman. To avoid the numerous discussions in court and filings over such evidence, the government treats the entirety of Aulaqi evidence as a request for a specific recording or transcript of a meeting with Dr. Al-Timimi. The government argues that any such Aulaqi evidence would be undiscoverable because Dr. Al-Timimi was present at the meeting. This tactic misrepresents the evidence and its use. The significance of the Aulaqi evidence is threefold by proving: (1) the knowledge of the Government that Aulaqi sought to recruit Dr. Al-Timimi and was turned away, (2) the possible involvement of a government agent in seeking to incriminate Dr. Al-Timimi on associations to Al-Qaeda, and (3) the conflicted testimony, for purposes of impeachment, of a witness like Ammerman, who has been accused of lying about his knowledge of Dr. Al-Timimi and his involvement in such prior efforts.

    The Supreme Court has repeatedly stressed that the duty of disclosure includes not just exculpatory evidence, but evidence that could be used for impeachment. *Giglio v. United States*, 405 U.S. 150, 154 (1972). This clear precedent was further amplified by this Court in *Parker*. In that case, the Fourth Circuit overturned convictions due to the failure to disclose impeachment evidence in prosecutions for illegal gambling. The government had failed to disclose a prior investigation that would have shown its identification of a participant in the alleged scheme that would have undermined both testimony and the theory of the

government. *See also United States v. Pelullo*, 105 F.3d 117, 123 (3d Cir. 1997) (remanding for a new trial due to government's failure to disclose evidence that "could have been used by defense to undermine the credibility" of an IRS and FBI agent's testimony and formal reports when the "credibility of the[se] government witnesses was so central to the government's case"). Dr. Al-Timimi has sought disclosure of the long-denied pre-2003 investigations that would have shown not only his refusal to associate with Al-Qaeda but conflicts in the testimony of key witnesses like Ammerman on his suspected associations and how this investigation of Dr. Al-Timimi began. Notably, the prosecution does not contest any of the reference and reliance on the Al-Qaeda associations before or during trial.

## II. THE GOVERNMENT FAILS TO ADVANCE ANY SUBSTANTIVE ARGUMENT AGAINST INCORPORATION OF SQUAD IT-3 IN THE APPELLATE RECORD

The Appellee offers a single line on the second half of the motion, stating that "[i]t makes no sense" to do so. Gov't Resp. at 7. That is the extent of the legal argument presented after an order of the Court to respond to the motion. Such "argument" leaves the Appellant with little option beyond saying "it really does make sense." However, if the Court is looking for something more substantial, Defendant notes that the government has not contested the authority of this Court to order the inclusion of the document in the appellate record in the interests of justice, efficiency, or both. What does not "make sense" is to allow the

Government to withhold a previously sought document until after the filing of a notice of appeal and then seek to bar its use by arguing that it is entirely "speculative" that such evidence exists. Finally, the Appellee is incorrect in its suggestion that this document was "never previously presented to the district court." *Id.* While not denying that the NARA documents were discussed in the record below, the Appellee simply ignores the prior references by treating the Squad IT-3 document as entirely outside of the record.

## III. CONCLUSION

Federal courts have continued to document a long history of *Brady* and discovery violations by the Justice Department—advancing some of the same specious arguments seen in this case. The suggestion that this document is not discoverable under any standard or rationale is a chilling example of what has been described as an institutional pattern of misconduct. *United States v. Jones*, 620 F. Supp. 2d 163, 164 (D. Mass. 2009) (describing "yet another" case of a Justice Department prosecutor withholding evidence and citing dozens of cases from around the country of federal prosecutors violating *Brady* and discovery orders). As shown by *Parker*, these cases continue with the Justice Department denying materiality or harm. *See United States v. Flores-Rivera*, 787 F.3d 1 (1st Cir. 2015) (new trial ordered for failure to disclose); *Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014) (same). Chief Judge Alex Kozinski of the United States Court of

Appeals for the Ninth Circuit has referred to this pattern as "an epidemic of *Brady* violations" to which "[o]nly judges can put a stop." *United States v. Olsen,* 737 F.3d 625, 626 (9th Cir. 2013) (Kozinski, C.J., dissenting from denial of rehearing en banc); *see also* Miriam H. Baer, *Timing Brady*, 115 Colum. L. Rev. 1 (2015). The Squad IT-3 document is just one redacted document out of hundreds that the Appellant was able to secure from NARA. Moreover, the government is correct that it is "a cryptic redacted document" and "its un-redacted original remains outside the record." Appellee's Resp. Mem. at 9. This all would seem to militate heavily in favor of a remand to allow the review of the original and those documents in the numerical series referenced in Squat IT-3.[4]

In light of the foregoing, Dr. Al-Timimi respectfully requests an order of remand in this case for the lower court to consider the Squad IT-3 document and its underlying information, and to take appropriate actions, including, but not limited to, making this document and any resulting discovery part of the record below. Alternatively, Dr. Al-Timimi asks for an order allowing this document and its content to be used by the defense on appeal.

---

[4] Indeed, Appellee's admission that the prosecution did not previously review this document is itself troubling. *See United States v. Salyer*, 2010 U.S. Dist. LEXIS 77617, 2010 WL 3036444, at **3-5 (E.D. Cal. Aug. 2, 2010) (citing a 2010 requiring the prosecutor's "actual review" of materials for Brady disclosures).

Respectfully submitted,

                                _____/s/_____
                                Jonathan Turley
                                Counsel For Dr. Al-Timimi
                                The George Washington University
                                2000 H St., N.W.
                                Washington, D.C. 20052
                                (202) 994-7001
                                jturley@law.gwu.edu

Dated: July 13, 2015

# CERTIFICATE OF SERVICE

I certify that on July 13, 2015, I will file the foregoing document on the CM/ECF system, which will then send an electronic notification to:

    Gordon D. Kromberg
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, VA 22314
    gordon.kromberg@usdoj.gov
    703.299.3721 (t)
    703.2993981 (f)

                                Respectfully submitted,

                                _____/s/_____
                                Jonathan Turley
                                Counsel For Dr. Al-Timimi
                                The George Washington University
                                2000 H St., N.W.
                                Washington, D.C. 20052
                                (202) 994-7001
                                jturley@law.gwu.edu

Dated: July 13, 2015