UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Filed with the Classified
Information Security Officer
CISO M.Utz
Date 4/29/2015

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 14-4451 (1:04-cr-00385-LMB-1)

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ALI AL-TIMIMI,

      Defendant-Appellant.

## APPELLANT'S MOTION FOR REMAND, OR, IN THE ALTERNATIVE, AN ORDER ALLOWING THE INCLUSION OF FBI DOCUMENT

Pursuant to Federal Rule of Appellate Procedure 27, Appellant, Dr. Ali Al-Timimi, through counsel, respectfully seeks relief for an order of remand, or, in the alternative, an order allowing Appellant to include in its appeal a recently released document. The release of the new document (Exhibit A) has raised serious questions regarding the withholding of material information in this case. Lead defense counsel received this document in March 2015 from the National Archives and Records Administration (NARA). The document references "Squad IT-3" of the Washington Field Office (WFO) of the Federal Bureau of Investigation (FBI) (hereinafter the "Squad IT-3 document") and confirms prior investigations of Appellant that were not disclosed to the defense. *See* Exhibit A (Squad IT-3

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

1

document); Exhibit B (analysis of Squad IT-3 document).

While referenced in prior discovery of documents being sought from NARA, the document was not released until last month and was never shown to cleared counsel in classified productions. The defense has raised the disclosure with opposing counsel who maintains that the document cannot be considered by this Court despite the appeal of the denial of discovery in this case (including such pre-2003 investigation records). The defense believes that this document is a critical piece of evidence that removes the alleged speculation over the existence of withheld material evidence and that, in the interests of both due process and efficiency, it should be considered on appeal. Since the case has been delayed by the government declassification process and the relocation of Dr. Al-Timimi, the opening brief in this case has not been filed. At the very least, Appellant believes that the importance of this evidence warrants that the matter be brought to the attention of the Court.

Accordingly, due to the probative value of this document, Dr. Al-Timimi seeks to remand this case to the district court to address the allegation of withheld evidence, or at a minimum, to allow this document to be made part of the record. The motion does not seek to overturn any prior orders or to order the lower court to take any action beyond adding this document to the record (and take whatever action it deems appropriate). Such an order would allow a full record to be

presented, including the lower court's position (if any) on the new evidence to avoid a later remand on the issue. In the alternative, Appellant asks that this Court allow for consideration of this document on appeal. Fed. R. App. P. 10(e)(2)(C); Circuit Rule 10(d).

## FACTUAL BACKGROUND

One of the key issues in this appeal is the refusal of the district court to order additional discovery despite indications that Dr. Al-Timimi was the subject of undisclosed and material investigations and surveillance. Squad IT-3 contains references to three areas of evidence sought previously by the defense: (1) pre-2003 investigations; (2) the alleged Al-Qaeda connection of Dr. Al-Timimi; and (3) Dr. Al-Timimi's interaction with Anwar Aulaqi. The Government has long maintained that the only material investigation of Dr. Al-Timimi began in early 2003, and the district court ruled that there was no evidence of material investigation before 2003. While the defense was able to review a small amount of withheld evidence on the SCIF that it viewed as material, the district court refused to order discovery beyond this initial classified disclosure and denied all of the motions for such discovery. The district court acknowledged repeatedly that the defense could not make a showing of withheld evidence that it was not allowed to see, but said that it knew of no such evidence from its in camera reviews. The Squad IT-3 document was sought to establish the existence of undisclosed

evidence in this case. The document itself is material to the case and further references multiple investigations prior to 2003 with possibly hundreds of documents related to Dr. Al-Timimi, Anwar al-Aulaqi, and/or Al-Qaeda.

## A.    Procedural History

At its core, this case centers on allegations that Dr. Ali Al-Timimi—a computational biologist employed in cancer research and a prominent Muslim scholar—made comments at a dinner shortly after 9-11 that allegedly inspired certain men in attendance to go forward with a plan to travel to a camp in Pakistan run by Lashkar-e-Taiba (LET), a group the United States would later designate as a terrorist organization. Under assorted theories of inchoate liability, Dr. Al- Timimi was charged with and convicted of 10 felonies. In a result that the district court described as "very draconian," Sentencing Hr'g Tr. 20:23-24, July 13, 2005, he received a mandatory lifetime prison sentence.

This Court remanded this case after media reports disclosed the existence of secret surveillance programs conducted by the Government.[1] From April 25, 2006 until May 21, 2014, Dr. Al-Timimi filed roughly two dozen motions seeking discovery of undisclosed evidence. In more than eight years, virtually all of these

---

[1]     *See* James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005, at http://www.nytimes.com/2005/12/16/politics/16program.html; Carol D. Leonnig, *Surveillance Court Is Seeking Answers*, Wash. Post., Jan. 5, 2006, at http://www.washingtonpost.com/wp-dyn/content/article/2006/01/04/AR2006010401864.html.

motions were denied by the lower court and, more importantly, only a few pages of new information have been disclosed to the defense, in either classified or unclassified form, despite confirmation of withheld evidence in the case. To establish such a basis, the defense sought evidence through NARA and other sources using the Freedom of Information Act and other means. After years of such attempts, the defense was able to obtain documents referring to earlier investigations involving Dr. Al-Timimi and other figures, like Aulaqi.[2] However, the Squad IT-3 document was not disclosed until after this appeal was taken.

### B.    The Government's Prior Statements Regarding This Information

Without reproducing the entire list of prior demands and statements, even a cursory examination of the Squad IT-3 document establishes its materiality.

### 1.    Prior Investigations and Surveillance

Throughout this case, from pre-trial to the post-remand proceedings, one issue has remained predominant: the insistence that no material investigation of Dr. Al-Timimi occurred before 2003. In both pre-trial and post-remand hearings, the Government insisted that there was no material FISA intercepted evidence or investigations that pre-dated 2003.[3] On remand, Assistant United States Attorney

---

[2]    There are variations in spelling of names in case, including the Appellant's. "Al-Timimi" is the spelling used on Appellant's birth certificate). Aulaqi also appears in various forms from "al-Aulaki" to "AuLaki."

[3]    After the disclosure of pre-2003 investigations during the remand, the Government argued (and the district court accepted) that "there was a mutual

(AUSA) Gordon Kromberg answered affirmatively when expressly and

unambiguously asked to confirm the court's understanding that "the government

insists that there was no material investigation of Timimi until 2003.[4] On its face,

the Squad IT-3 document is itself evidence of a material investigation before 2003

and refers to hundreds of other potential material documents.[5]

### 2. The Al-Qaeda Allegation

From the outset of this case, the Government sought to associate Dr. Al-

Timimi with Al Qaeda. For example, in his affidavit supporting the search warrant

---

understanding before trial that defendant had been on the government's radar for
several years before the criminal investigation started in 2003." Mem. Opinion,
April 28, 2014, at 17 (Docket #350). This position was maintained despite the
testimony of Special Agent Ammerman that the investigation began in early 2003.
(Trial Tr. 1337:6 (Apr. 11, 2005)); *see also* Dkt. No. 220, Hr'g Tr. 38:9-11, (Jan.
16, 2007) (court stating that the Government "insists that there was no material
investigation of Timimi until 2003"). On remand, the district court accepted the
Government's position that Ammerman may have been referring to the start of the
criminal investigation as opposed to all intelligence investigations. *Id.* at n.7.

[4]    In 2006, Dr. Al-Timimi's trial counsel wrote a letter to the lower court
stating that, during the course of representing another client, he had come across
9/11 Commission documents indicating that Dr. Al-Timimi had been the subject of
a government investigation long before the period of time stated by the
Government. Later, FBI Agent Christopher Mamula testified on the limited efforts
to find the information using paper finding aids (Dkt. No. 220, Hr'g Tr. 13:25-
42:7, Jan. 16, 2007). A limited number of documents from the 9/11 Commission
records, allegedly containing Dr. Al-Timimi's name, were turned over to the Court
*ex parte.* Dr. Al-Timimi, however, was denied access to this material through
cleared counsel and to conduct his own search. (Dkt. 231).

[5]    Notably, a search of the National Archives by Special Agent Chris Mamula
of pre-9/11 documents produced no additional documents. While lead defense
counsel examined Special Agent Mamula and questioned his method of reviewing
the available files, Mamula insisted that he was "looking for anything that certainly
could point us to the issue of Al-Timimi." Hearing Trans. (Jan.16, 2007) at 26.

in this case, Special Agent Ammerman repeatedly referenced Al-Qaeda and stated that Dr. Al-Timimi mirrored the views of the organization, associated with Al-Qaeda suspects, and used his position to get young Muslims to fight alongside Al-Qaeda. Ammerman Affidavit, Search Warrant, at 3-4 (Def's Mem. in Supp. of Mot. To Compel Discovery Related To Anwar Aulaqi) (Exh. G) (Docket #300). The filing made in lieu of a bill of particulars also referenced Al-Qaeda repeatedly and stressed Dr. Al-Timimi's connection to "Foreign Terrorist Organizations." Gov't Response to Def.'s Supp. Pre-Trial Motions at 7 ("Attempting to conspire to provide material support and resources to foreign terrorist organizations") (Docket #23). Al-Qaeda was repeatedly raised in both the original indictment, see Dkt. No. 1 at 2-3, and the final superseding indictment. See Dkt. No. 47 at 2-3.

The Government then proceeded to raise Al-Qaeda repeatedly both pre-trial and at trial.[6] Indeed, in pre-trial hearings, the defense objected to the continued effort to bring the Al-Qaeda allegation into the trial given the lack of any disclosure or explanation of Dr. Al-Timimi's association or connection to Al-Qaeda. *See, e.g.*, Def.'s Motion in limine Regarding Items Found in Search of Masoud Khan's House at 3 (Docket #54). For example, the Government emphasized the Al-Qaeda connection in Jury Instruction 44h, over the objections of the defense. Jury Instruction 44h ("Attempting and conspiring to provide

---

[6]    This included the Government's calling witnesses to testify on Al-Qaeda. Gov's Resp. to March 2005 Motions as to Ali Al-Timimi at 9, 11 (Docket #62).

material support and resources to Al-Qaeda, in violation of Title 18, United States Code, Section 2339B"); Transcript Vol. 8 (Dkt. No. 155) at 2170 (objections to the Al Qaeda association); *id.* Vol. 9 (Dkt. No. 156) at 2178 (same).

Despite the Court's sustaining of an objection to the use of the Al-Qaeda allegation, Transcript Vol. 7 (Dkt. No. 154) at 1772, the Government proceeded to raise Al-Qaeda at trial. For example, Special Agent Wyman (who is referenced in Squad IT-3) expressly raised "Al-Qaeda and [the FBI] effort to investigate the risk of detonating a weapon of mass destruction in the United States." Tr. Vol. 7 at 1772 ("Well, in addition to the, you know, the investigating – investigation we were conducting, we knew of extensive ties between Timimi, Hawaali, and other elements of the broader Al-Qaeda network."). Ammerman also raised the threat of Al-Qaeda. Vol. 6 (Dkt. No. 153) at 1441. While the defense continued to object to the references to Al-Qaeda, it did not have any evidence, such as the Squad IT-3 document, to show that these very agents were part of earlier investigations into Al-Qaeda. Consequently, it was unable to use such evidence to argue for the exclusion of the Al-Qaeda evidence or to cross examine these witnesses regarding the linkages with Al-Qaeda. The Government has even stressed the investigation of the Al-Qaeda connection to Dr. Al-Timimi to this Court in prior briefing.[7]

---

[7]    In its brief in the Sabri Benkahla appeal, the Government told this Court that "[i]n 2004, the FBI was investigating individuals suspected of connections to Al-Qaeda. This included Timimi, because Timimi had been a student of Hawali, a

### 3.    The Anwar al-Aulaqi Association

Anwar al-Aulaqi was the alleged influence behind the attacks by Nidal

Malik Hasan, an Army psychiatrist accused in the 2009 Fort Hood shootings, and

Umar Farouk Abdul Mutallab, who, in 2009, attempted to blow up Northwest

Airlines Flight 253, and himself.[8] Ultimately, President Obama ordered Aulaqi

killed in a drone attack in Yemen on September 30, 2011.  There is growing

evidence that Ammerman personally intervened to release Aulaqi and that

Ammerman was corresponding with Aulaqi during the Virginia Jihad trial.[9]

Shortly after Ammerman's intervention in 2002, Aulaqi showed up, unannounced,

at Dr. Al-Timimi's home in an attempt to recruit him for terrorism.  The Squad IT-

3 document shows conclusively that Dr. Al-Timimi was the subject of an earlier

investigation into that very association.

---

Saudi cleric associated with Bin Laden."  Brief for the United States, *United States v. Benkahla* 07-4778 at 13.  In fact, as indicated in Squad IT-3 document, it was investigating this connection before 2003.

[8]    Brian Ross and Lee Ferran, *How Anwar al-Awlaki Inspired Terror From Across the Globe*, ABC News (Sept. 30, 2011), http://abcnews.go.com/Blotter/anwar-al-awlaki-inspired-terror/story?id=14643383#.UeSXyNKsjTo.

[9]    Both this information, and the connection to Al-Timimi, has been featured in the media.  *See, e.g.*, Catherine Herridge, *Disagreement Over Whether 9/11 Hijackers Had Support Inside U.S., Report Says*, Fox News (March 27, 2015), http://www.foxnews.com/politics/2015/03/27/disagreement-over-whether-11-hijackers-had-support-inside-us-report-says/  "Details of al-Awlaki's re-entry, the role agent Ammerman played, and the cleric's appearance in the Timimi case were not provided to Timimi's defense during his original trial, and continue to be withheld during his appeal.")

Dr. Al-Timimi has sought information not only about the October 2002 visit, but also about Aulaqi's relationship with other witnesses and parties involved in the investigation of the "Virginia Jihad," and the activities surrounding Dr. Al-Timimi. In addition to the earlier pre-trial demand, Dr. Al-Timimi has repeatedly requested this information during the remand period[10] and sought alternative sources for information.[11] The Government now insists that confirmation that Ammerman's office had prior investigations targeting Dr. Al-Timimi (with links to Aulaqi and Al-Qaeda) would not be discoverable.[12]

---

[10]     Def.'s Mem. In Supp. Mot. To Compel Discovery Related to Anwar al-Aulaqi 7-8 (Ex. F) (Docket #300) (Jonathan Turley to Gordon D. Kromberg, at 5 (Sept. 14, 2007) (seeking "Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators" including Aulaki documents or surveillance, including but not limited to his "visit to Dr. Al-Timimi's home in October 2002 when he was accompanied by Nabil Gharbieh and Rubeel Iqbal").

[11]     This included the NARA 9/11 Commission-related records. In September 2012, after negotiating issues of scope and search terms with NARA, defense counsel received permission from NARA authorities to search its electronic database of 9/11 Commission-related documents for material relevant to this remand. Defense counsel was not permitted to view any of the 9/11 Commission documents containing Dr. Al-Timimi's name, and was able to view only a declassified subset of those documents containing Aulaqi's name.

[12]     Special Agent Ammerman affirmatively testified at trial that the investigation of Dr. Al-Timimi began in February 2003. (Trial Tr. 1337:6 (Apr. 11, 2005); *see also* Dkt. No. 220, Hr'g Tr. 38:9-11, (Jan. 16, 2007)) (Court stating that the government "insists that there was no material investigation of Timimi until 2003"). In his Affidavit in Support of Application for Search and Seizure Warrants on Dr. Al-Timimi's home (Exhibit J), he states that he was made aware of Dr. Al-Timimi's activities at the Dar al-Arqam mosque on November 19, 2002, following a tip from a confidential informant. (Exhibit J at ¶ 17). Later in the affidavit, Special Agent Ammerman strongly implies that he had never heard of

## C.    The Squad IT-3 Document

The Squad IT-3 document is the evidence that the defense long sought to show that the withholding of material evidence was not "mere speculation." Indeed, the defense had specifically requested this document, which was referenced in earlier productions, because it believed that it would constitute such a significant piece of evidence. Specifically, the October 2002 date of the document (and inclusion of both Al-Timimi and Aulaqi), made this document a priority for the defense. The document shows that, as of October 23, 2002, three investigations were ongoing (199N-WF-217423, 199N-WF-222852, and a third redacted investigation).[13]  199N-WF-222852 appears to be the WFO Aulaqi investigation that was discontinued on May 6, 2003. The document shows not only the investigation of Dr. Al-Timimi, but its association with Aulaqi during the very period of concern (October 2002).

The Squad IT-3 document shows six related investigations of Dr. Al-Timimi from before 2003. The reference to 199N-WF-217423 is itself important because it is believed to be an investigation with FISA material predating 2003. The

_____

Dr. Al-Timimi before that same tip ("Upon learning of Timimi from CI-1 and CI-2…I researched Timimi on the internet."). *Id.* at ¶ 21.

[13]    The Squad IT-3 document was generated by the WFO and approved by Special Agent Donald DeMay, who interviewed Dr. Al-Timimi on September 27, 2001, and works with key agents involved in the Al-Timimi case, including Special Agents Ammerman and John Wyman. The document appears to have been drafted by Special Agent Wyman, as evidenced by his initials, "jvw."

defense was able to present to the district court, evidence indicating pre-2003 FISA

material, despite the denial of such surveillance evidence by AUSA Kromberg to

trial counsel in 2005. Before the trial, defense counsel repeatedly raised the

absence of pre-2003 investigation material, including the absence of pre-2003

FISA material. *See, e.g., Dkt. No. 145, Hr'g Tr.* 9:14-19, Jan. 28, 2005. The fact

that such evidence was requested, and denied, by the Government, led to the

critical stipulation between the parties that "the defendant was subject to court-

authorized electronic surveillance for a significant portion of 2003." Government

Exhibit 12-60 April 13, 2005). Stipulation 60 however, reflected the clear

understanding that Dr. Al-Timimi was *not* subject to court-authorized electronic

surveillance before 2003. Reaffirming this understanding, FBI Special Agent

Ammerman testified that his investigation of Dr. Al-Timimi began in February

2003. (Trial Tr. 1337:6 (Apr. 11, 2005)). After the remand of this case, current

counsel repeatedly raised the issue of pre-2003 investigations. In the post-remand

hearings, the district court was sufficiently concerned about the existence of pre-

2003 surveillance, that it subsequently ordered the Government to search the

National Archives and Records Administrations 9/11 Commission records for

evidence of such an investigation.[14] However, in January 2007, the district court

---

[14]    This search was done after former counsel Mr. MacMahon (working on the
Moussaoui case), came across material in the National Archives indicating that Dr.
Al-Timimi had been the subject of a government investigation prior to 9/11. In a

reiterated that it understood the Government's contention to be that there was no material investigation of Dr. Al-Timimi until 2003. *See Dkt. No. 220, Hr'g Tr.* 38:9-11, Jan. 16, 2007.

In addition to the pre-trial motions, current counsel asked for undisclosed discovery regarding prior investigations of Dr. Al-Timimi, as well as investigations of Aulaqi during the critical period of 2002 when he appeared at Dr. Al-Timimi's house to seek his help in recruiting young men for terrorist activities. Dr. Al-Timimi turned Aulaqi down and later sought to establish that the Government knew of the meeting and had related investigatory information. The NARA document references an investigation with the designation 199N-WF-217423. This investigation of Dr. Al-Timimi has been referenced in other NARA documents obtained during the remand. However, this document shows 266 documents within the then pending 199N-WF-217423 investigation.

The references in this document to Dr. Al-Timimi and International Terrorism (IT) (as well Usama Bin Laden (UBL) and Al-Qaeda) make it obviously material to the basis for the search warrant on Dr. Al-Timimi's house and the original the indictment in this case. Additionally, the document makes specific

---

later declaration, Mr. MacMahon reiterated that "I had no knowledge of any contemporaneous FISA of any of the 'Virginia Jihad' defendants before 2003," and that such knowledge would have had a profound impact on his strategy and examinations. Def's Rebuttal To Gov't Resp. To Mot. To Compel Discovery Captured Pursuant To Foreign Intelligence Surveillance Act (Exh. B) (Docket #328).

reference to the "recent visit to the Washington D.C. area by Anwar Aulaqi." It further reveals information (redacted) concerning the following event: "On Sunday, 10/13/2002, Aulaqi made public appearances at the Dar al Hijrah Mosque and the Dar Al Arqam Islamic Center." That is the night that the defense believes the critical visit occurred at the house of Dr. Al-Timimi.[15]

### D.    The Position Of The Government

After receiving the NARA document, lead defense counsel Jonathan Turley contacted AUSA Kromberg, the lead prosecutor at trial, to confirm that the Government never disclosed this document and whether it would agree to steps allowing the document to be considered by this Court. *See* Exhibit D.  Kromberg responded that the Government would oppose consideration of the document by this Court. (Exhibit E).  The same day, Turley wrote back to ask again for Kromberg to confirm that this document was not disclosed, whether he would take steps to confer with these agencies to determine whether material was withheld both at trial and during the remand, and whether he would oppose consideration of the document on appeal absent a remand. (Exhibit F).  In subsequent emails, AUSA Kromberg stated that there is nothing in the document would be viewed as material. (Exhibit G).  In a later email, defense counsel asked the Government to

---

[15]     Defense counsel conferred with both Dr. Al-Timimi and former trial counsel Mr. MacMahon.  Both were adamant that neither the document, nor the underlying information, were disclosed to the defense.  Mr. MacMahon has submitted a declaration to this Court, which is found in Exhibit C.

confirm that it was opposing any consideration of the document on appeal.

(Exhibit H). AUSA Kromberg gave the final position of the Government (Exhibit

I) that it will "oppose the inclusion of this document in the appellate record if you

do not choose to seek a remand at this point."

## ARGUMENT

Despite the Government's claim that there is nothing discoverable or

material in this document, the evidentiary value is obvious on its face. The defense

is cognizant of the fact that a remand is an extraordinary measure, but it believes

that this case is such an extraordinary circumstance. While the defense did not

seek a remand on the other information supporting its arguments of withheld

documents, including other NARA documents, the Government's position has

forced this issue on this critical document and warrants raising the matter with the

Court. The defense had specifically sought this document because it would give

the lower court the concrete proof that it demanded of the Government withholding

material evidence. Moreover, since this appeal was delayed by months for

declassification review by the respective agencies (in which the majority of content

documents were unclassified after years of being kept in a SCIF), the disruption of

the appeal is minimal. Such a remand is further warranted when serious questions

of contempt, misrepresentation, or perjury are raised.

## I.    A REMAND WOULD ALLOW FOR A FULL AND COMPLETE RECORD TO BE PRESENTED ON APPEAL

A remand in this case is justified by the extraordinary facts presented in how and when this document was disclosed. The defense fought actively for years to secure this and other documents. The document was in the possession of the Government and was not disclosed before trial or after the remand despite motions seeking such information. At the very least, a remand would allow the lower court to make this document part of the trial record. The district court can also take any further action that it deems appropriate. Ideally, the district court will seek the full version of the document and order the production of the referenced material. However, even if the district court decides to take no further action, the record will be clear that the document was considered and did not alter the district court's determination that there was no material investigation before 2003.

The obvious conflicts between representations made to the Court and made under oath by Government witnesses raises core due process issues that should not be kept from the consideration of either the district court or the appellate court. *See United States v. Kelly*, 35 F.3d 929, 933 (4th Cir. 1994) (*citing Napue v. Illinois*, 360 U.S. 264, 269 (1959)); *Hall v. United States*, 30 F. Supp. 2d 883, 891-92 (E.D. Va. 1998). Such misrepresentation denies the fundamental rights of a defendant "whether the government solicited testimony it knew or should have known to be false or simply allowed such testimony to pass uncorrected." *Hall,* 30 F. Supp. 2d at 891-92 (citing *United States v. Agurs*, 427 U.S. 97, 103

(1976)).  The seriousness of such an allegation has been repeatedly recognized by the Supreme Court, which has held that convictions must be set aside when there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Agurs*, 427 U.S. at 106; *Hall,* 30 F. Supp. 2d at 891.  This includes not only when there is a question of false evidence on the merits of the allegation (as here), but also when there is simply evidence that calls the credibility of witnesses into question and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Agurs*, 427 U.S. at 103.  As noted in *Naque,* "the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."  360 U.S. at 269.  In the instant case, the jury heard not only a misleading timeline of the underlying investigation of Dr. Al-Timimi, but also was not informed of investigations looking specifically into the issues raised during the trial, including the alleged association with Al-Qaeda.  In addition, the very agents testifying were involved in the earlier investigations and had knowledge of the falsity of the representations made at trial.

A remand in this case would allow for the record to include this key document in an appeal that will address not just the withholding of such evidence but whether challenged testimony was "harmless beyond a reasonable

doubt." *United States v. Bagley*, 473 U.S. 667, 679 n.9 (1985). While the government maintains that it has no obligation to investigate the failure to produce such evidence following such disclosures, a remand would allow this position and its impact to be evaluated in the context of actual documentation. In a case where discovery was denied as mere speculation, this document would give an actual example of the type of discovery that was withheld at trial and post-remand in this case. The Squad IT-3 document should have been produced to the defense in 2005, but was withheld, despite its references to specific inquiries contained in past motions or orders: investigations of Dr. Al-Timimi, investigations linking Dr. Al-Timimi and al-Aulaqi, the Al-Qaeda allegation, and the events surrounding the October 2002 visit of al-Aulaqi to Dar al-Arqam and then Dr. Al-Timimi's home. It further references the special agents accused of possible perjury or misrepresentation in this case in the factual context in which those allegations were raised (concerning the pre-2003 investigations and knowledge of key players). The document and related material should be reviewed, both for its evidentiary importance as well as its importance in determining whether there has been perjury or contempt committed by the Government in this case.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD CLARIFY THAT THIS DOCUMENT MAY BE USED ON APPEAL

The defense maintains that this document was part of the NARA material raised with the lower court, and is properly included with such material on appeal.

However, the Government has made clear that it considers the inclusion to be improper. Given the importance of the document, the matter should be resolved if there is to be no remand. The interests of both justice and efficiency weigh heavily in favor of inclusion of the document in the appeal.

This is not a case where there was a failure of transcription or recording that is addressed under Rule 10(c). *See* Fed. R. App. P. 10(c); *see also Barilaro v. Conrail*, 876 F.2d 260, 263 (1st Cir. 1989); 16A Wright, Miller, & Cooper, Federal Practice and Procedure § 3956.3 (1999). While the Appellant maintains the reference to the NARA material below is part of the record,[16] the document itself was not released to the defense to be made part of the "the papers and exhibits filed in the district court, transcripts of proceedings." Fed. R. App. P. 10(a). If the Court views this document as enlarging the record, Rule 10(e)(2) provides that, "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified" by this Court. Fed. R. App. P. 10(e)(2)(C). Even without a motion, the Court itself may also on it's "own initiative" direct supplementation of the record if the materials "bear heavily on the merits of appellant's claim" and that claim was presented for the first time on appeal. *See United States v. Aulet*, 618 F.2d 182, 187 (2d Cir. 1980). Appellant believes that

---

[16]     The defense also believes that the release of this document in redacted form constitutes a public document that can be included in the Appendix.

the circumstances present here show that this document should have been produced by the Government, and the defense took every measure possible to pursue this specific document before the filing of the notice of appeal.

The position of the Government is that the Squad IT-3 document was given to the defense after the notice of appeal, and thus cannot be part of the record for appeal, even though this was part of the NARA material raised with the district court and was produced in redacted form as a follow-up to the earlier listing of documents by NARA with reference to Dr. Al-Timimi. The defense believes that, while this particular document was not produced, the inclusion in the earlier listing allows it to be considered on appeal for its content. However, given the importance of this document, and the opposition of the Government to this Court considering it, the defense believes that an order is warranted.

## CONCLUSION

In light of the foregoing, Dr. Al-Timimi respectfully requests an order of remand in this case for the lower court to consider the Squad IT-3 document and its underlying information, and to take appropriate actions, including, but not limited to, making this document and any resulting discovery part of the record below. Alternatively, Dr. Al-Timimi asks for an order allowing this document and its content to be used by the defense on appeal.

Respectfully submitted,

Jonathan Turley
Counsel For Dr. Al-Timimi
The George Washington University
2000 H St., N.W.
Washington, D.C. 20052

Dated: June 29, 2015

## CERTIFICATE OF SERVICE

I certify that on June 29, 2015, the foregoing document was served on all

parties or their counsel of record through the Court security officer if they are

registered users or, if they are not, by serving a true and correct copy at the

addresses listed below:

Gordon D. Kromberg
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
gordon.kromberg@usdoj.gov
703.299.3721 (t)
703.2993981 (f)

Jonathan Turley
Counsel For Dr. Al-Timimi
The George Washington University
2000 H St., N.W.
Washington, D.C. 20052