# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff-Appellee,* ) | |
| ) | No. 14-4451 |
| v. ) | (1:04-cr-385-LMB) |
| ) | |
| ALI AL-TIMIMI, ) | |
| ) | |
| *Defendant-Appellant.* ) | |

## DECLARATION OF THOMAS HUFF

Under 28 U.S.C. § 1746, I, Thomas Huff, state the following:

**Background**

1. I have served as co-counsel for the defendant, Dr. Ali Al-Timimi, in the above-captioned case since November of 2014.

2. I have been an attorney for approximately 18 years. I completed law school in 2006 and became a licensed member of the Virginia State Bar the same year. In 2008, I became licensed with the D.C. Bar as well.

3. From 2006 to 2010, I worked as a litigation associate for the firm of Kenyon & Kenyon LLP (later Andrews Kurth Kenyon LLP and

now Hunton Andrews Kurth LLP), where my practice focused primarily on pharmaceutical patent litigation. I also served a member of Kenyon's pro bono practice group in collaboration with the ABA Death Penalty Representation Project. In 2008, I received a Thurgood Marshall Award from the New York City Bar Association for pro bono appellate representation of a capital defendant.

4. During my time at Kenyon, I also worked on a pro bono project outside of my firm as a junior member of the Supreme Court litigation team for the plaintiff in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which involved a successful constitutional challenge to the application of certain firearms statutes and regulations in the District of Columbia. I was later awarded attorney fees by the district court under § 1988. *See Heller v. District of Columbia*, 832 F. Supp. 2d 32, 60 (D.D.C. 2011) (fee award order).

5. In 2010, I was involved in an accident that required a period of rehabilitation. From 2010 to 2014, I became Of Counsel to the firm of Gura & Possessky PLLC, with a federal litigation practice that regularly involved legal challenges to various applications of the federal firearms laws. *See, e.g., Dearth v. Holder*, 641 F.3d 499, 500 (D.C. Cir.

2011); *Schrader v. Holder*, 831 F. Supp. 2d 304 (D.D.C. 2011); 704 F.3d 980, 982 (D.C. Cir. 2013). I also drafted opinion letters and counseled clients on the application of federal and state firearms laws.

6. In 2014, I left Gura & Possessky and began working as an in-house attorney for a small company, while continuing to maintain an occasional pro bono litigation practice. In November of 2014, I became co-counsel for defendant Ali Al-Timimi, in part to focus on what I viewed as several unique applications of federal firearms statutes that relied on expansive theories of inchoate liability.

7. Between 2016 and 2019, I filed and briefed several motions with the district court challenging Al-Timimi's accomplice liability convictions under Counts 1 and 7-10 for various weapons-related offenses. These motions subsequently went through several iterations of supplemental briefing in response to intervening legal developments. The motions included:

- A **Renewed Motion for Acquittal on Counts 7 and 8**. *See* Dkt. Nos. 432-433 (motion and opening brief); Dkt. No. 438 (reply brief); Dkt. No. 443 (supplemental briefing to address *Sessions* v. *Dimaya*, 584 U.S. 148 (2018)); Dkt. Nos. 459 & 464 (supplemental

briefing to address *United States v. Davis*, 588 U.S. 445 (2019)); Dkt. No. 542 (notice of supplemental authority to address *United States v. Taylor*, 596 U.S. 845 (June 21, 2022)).

- A **Renewed Motion for Acquittal on Count 1**. *See* Dkt. Nos. 445-446 (motion and opening brief); Dkt. No. 449 (reply).

- A **Motion for Leave to Seek a New Trial on Counts 9 and 10**. Dkt. No. 460.

8. In its recent Memorandum Opinion and Order of July 18, 2024, the district court largely resolved these motions in Al-Timimi's favor by issuing judgments of acquittal under Counts 1, 7, and 8, thereby vacating his lifetime prison sentence. Dkt. Nos. 549, 550. The district court denied the motion for leave to seek a new trial on Counts 9 and 10 (the only counts that continue to subject Al-Timimi to incarceration), but did so based on its conclusion that the requested relief was outside the scope of this Court's remand order. See Dkt. No. 549 at 26.

9. I also briefed and argued Al-Timimi's successful *Emergency Motion for Release Pending Appeal* before the district court, Dkt. Nos. 465-466 (motion and opening brief); Dkt. No. 477 (reply brief); Dkt. Nos.

4

502-504 (supplemental briefing); Dkt. Nos. 514 & 516 (supplemental notices), and served as CJA counsel in defending the conditional release order on appeal before this Court in Case No. 20-4441.

10. Shortly after my CJA representation of Al-Timimi in the appeal of his bail order, I moved this Court in early 2021 to be appointed CJA co-counsel in his direct appeal as well. See ECF Nos. 130 & 132. On March 1, 2021, this Court granted the motion. ECF No. 133. To date, I have not submitted any vouchers seeking compensation for this representation.

11. With the exception of my 2020 CJA representation of Al-Timimi in the government's appeal of his bail order, I have performed all litigation work in this case on a pro bono basis without the resources of a law firm.

**Changes in personal circumstances**

12. As reflected in status reports to this Court, litigation at the district court entered a four-year period of effective dormancy from August 2020 to May 2024. See ECF No. 145 at 5-6. I occasionally entered filings alerting the district court to new authority, Dkt. No. 542, or seeking minor amendments to the terms of Al-Timimi's conditional

5

release, see, e.g., Dkt. Nos. 539-541, but Al-Timimi's dispositive motions otherwise remained pending.

13. During this period of dormancy, I performed little litigation work in general and was instead primarily focused on my graduate studies in pharmacology and medicinal chemistry. From 2019 to 2021, I pursued additional training in biochemistry and cellular biology. From August 2021 to May 2023, I earned an MS in Pharmacology and Physiology at the Georgetown University Medical Center, where I also performed research involving Prime Editing—a modified CRISPR/Cas-9 gene-editing technology recently developed in the Harvard laboratory of Dr. David Liu.

14. In late 2023, I applied and interviewed for a funded Ph.D. program at Georgetown. I accepted an offer of admission earlier this Spring (at a time when this case had been inactive for nearly four years), and entered the program as a first-year doctoral student on July 1. The program's first-year curriculum is particularly demanding and requires a full-time commitment to laboratory rotations and coursework. By the end of the first year, doctoral students are required

to pass written comprehensive examinations and locate a thesis laboratory, or face dismissal.

15. On July 18—just over two weeks after I entered the program—the district court issued an Order and Memorandum Opinion that resolved all of Al-Timimi's pending motions, thereby reactivating his direct appeal that had been on remand since 2015. See Dkt. Nos. 549, 550.

16. As a first-year doctoral student, my graduate responsibilities are virtually all-encompassing. Had this appeal been reactivated at any other time, I would devote myself to vigorously researching and briefing the many complex legal issues it implicates. But given my current circumstances, I am unable to take a leading role in doing so at present.

17. I have also spoken with Mr. Turley about his changing personal circumstances. Although his circumstances are private, I can represent my confident belief that they would meet any elevated standard for extraordinary circumstances. I can also represent that, despite those personal circumstances, Mr. Turley has continued to assist Al-Timimi's ongoing efforts to secure new legal counsel by

facilitating discussions with multiple law offices and attorneys who have expressed interest in the case.

**Communications with the government**

18. On July 26, I drafted a Notice of Decision alerting this Court to the district court's final judgment and of our intention to seek substitute counsel for our client, and further requested the Court stay entry of a scheduling order for 30 days. ECF No. 148. Prior to filing, I forward the draft to government counsel for comments or objections. The government consented and gave no indication that it would oppose our intention to retain substitute counsel for our client. That communication was as follows:

> Kromberg, Gordon (USAVAE) <Gordon.Kromberg@usdoj.gov>　　　　　Fri, Jul 26, 2024 at 2:40 PM
> To: Thomas Huff <thuff@law.gwu.edu>
> Cc: Jonathan Turley <jturley@law.gwu.edu>
>
> No objection. But if this means that I won't hear from you (and Jonathan) on such a regular basis in the future, that will be sad.
>
> Gordon
>
> -----Original Message-----
> From: Thomas Huff <thuff@law.gwu.edu>
> Sent: Friday, July 26, 2024 2:00 PM
> To: Kromberg, Gordon (USAVAE) <GKromberg@usa.doj.gov>
> Cc: Jonathan Turley <jturley@law.gwu.edu>
> Subject: [EXTERNAL] Al-Timimi - draft notice and request to Fourth Circuit
>
> Hi Gordon,
>
> Attached is a draft notice of decision to the Fourth Circuit, which also includes a request for a 30-day stay of any scheduling order, as further described in the document. Do you have any comments or any opposition to the 30-day stay? (I have no particular attachment to the word "stay"; I could call it something else if you'd prefer.)
>
> Tom

19. Nor had the government previously communicated to me a sense of exigency or otherwise given me reason to believe that it would

8

oppose such a plan. To the contrary, it was at the government's urging that we moved this Court in November of 2020 to *reduce* the parties' status reporting requirement from every 30 days to every 90 days. See ECF No. 127; see also ECF No. 128 (granting motion). And as recently as January 29 and April 26 of this year, the government proposed that we ask this Court to reduce that reporting requirement even further to once annually:

> **Kromberg, Gordon (USAVAE)** <Gordon.Kromberg@usdoj.gov>  Mon, Jan 29, 2024 at 1:02 PM
> To: Thomas Huff <thuff@law.gwu.edu>
> Cc: Jonathan Turley <jturley@law.gwu.edu>
>
> No objections or additions. Thanks for checking.
>
> At this point, why not ask the 4th Circuit to allow the reports to be annually?

> **Kromberg, Gordon (USAVAE)** <Gordon.Kromberg@usdoj.gov>  Fri, Apr 26, 2024 at 9:11 AM
> To: Thomas Huff <thuff@law.gwu.edu>
> Cc: Jonathan Turley <jturley@law.gwu.edu>
>
> Fine by me.
>
> It's an interesting (perhaps a metaphysical) question: why did the Fourth Circuit impose this reporting requirement on us (well, *you*) if no one at the Fourth Circuit would ever (as far as we can tell) pay any attention to these reports? Do you think anyone at the Fourth Circuit would care if a "quarterly" report was missed for one quarter - - or one year? Why not make the reports annual instead of quarterly?
>
> Thanks for checking with me.
>
> Gordon

20. On September 17, I emailed the government with an update on our efforts to seek substitute counsel and asked if government counsel would consent to a 30-day extension of the briefing schedule to

9

accommodate that process. I also notified the government of our unsuccessful efforts to reach our most recent Classified Information Security Officer. This time, however, the government indicated that it opposed our efforts to seek substitute counsel and would only consent to our extension request for the purpose of our filing a brief. Over several email exchanges, government counsel stated that he had previously consented to 12 extensions, that he was "confident that you two know the issues in this case well enough that you could easily file the brief by October 31st," and that "since [Al-Timimi is] out pending appeal, and it obviously is in his interest to drag out the appeal as long as possible, I have to be a bit more skeptical these days." I have attached our email exchange to this Declaration as **Exhibit A**. I briefly respond below.

21. The government's contention that I could "easily" brief and argue this appeal while a full-time Ph.D. student is simply untenable. Having dedicated many years of pro bono representation to this case, at significant personal cost, I would not seek to transfer representation without being absolutely convinced that it was necessary to protect my client's right to zealous advocacy. But I have reluctantly concluded that it would be impossible for me to provide effective representation under

10

my current circumstances. My first-year graduate-training obligations require me to devote almost all of my time—including nights and weekends—to study and research. Even attempting to draft and file this extension motion for our client in a timely manner has proven deeply impractical and required me to neglect important research and coursework responsibilities over three largely sleepless days. Attempting to brief and argue the many complex issues this case implicates on a solo basis while committed to a Ph.D. program would be functionally impossible and a disservice to my client. I do, however, remain committed to assisting substitute counsel with my background knowledge to facilitate their efficient and effective representation.

22. The government's suggestion that it is in Al-Timimi's interest to delay the appeal is similarly inaccurate. Al-Timimi's current conditions of release are functionally equivalent to home incarceration: He remains confined to the home of his mother, has no computer or internet access, is unable to pursue employment, and is free only in the most technical sense of the term. Moreover, because only two counts (Counts 9 and 10) continue to subject Al-Timimi to imprisonment at all, he will have lived under those conditions unnecessarily if his appeal of

11

those counts is ultimately successful. Consequently, both parties have a strong interest in bringing this case to a resolution on the merits.

23. Moreover, the government's assertion that it "has consented to the last 12 requests for extensions of the briefing schedule" appears to refer to activity from 2005-06 and 2014-15. In 2005-06, the government consented to three extension requests shortly before the parties agreed on a joint motion to remand the case. And although it is true that the government consented to nine extensions in 2014-15, the first seven of these were to allow a Classified Information Security Officer to complete a still-outstanding declassification review that had been ordered by the district court. See Dkt. No. 363. The latter two were to allow this Court to resolve a pending motion for remand—a motion that was ultimately granted. See ECF Nos. 49, 51, 56.

I so declare, under penalty of perjury, that the foregoing is true and correct.

Executed on September 20, 2024  _____
Thomas M. Huff

# Exhibit A



## United States v. Al-Timimi, No. 14-4451 (4th Cir.) -- motion for 30-day extension

**Kromberg, Gordon (USAVAE)** <Gordon.Kromberg@usdoj.gov>   Wed, Sep 18, 2024 at 1:01 PM
To: Thomas Huff <thuff@law.gwu.edu>
Cc: Jonathan Turley <jturley@law.gwu.edu>, "Attias, Joseph (USAVAE)" <Joseph.Attias2@usdoj.gov>

Tom,

I'm sorry that I cannot accommodate you this time. As I said earlier, if Timimi were in custody, that would be another story. But now that he is released "pending appeal," it's long past time to get that appeal underway. And it is obvious that if you recruit new attorneys onto the case today, the appeal will not get underway for a long time.

Further, having responded to your (including Jonathan's) various pleadings *for the last 19 years,* I am confident that you two know the issues in this case well enough that you could easily file the brief by October 31st.

Accordingly, the position of the United States that I hope you will convey to the court is that, just as the United States has consented to the last 12 requests for extensions of the briefing schedule, the United States would not oppose a request to extend the briefing schedule for another 30 days if necessary to enable the appellant's attorneys actually to file a brief by October 31st - - but the United States opposes the request to extend the briefing schedule to the extent that its purpose is to enable attorneys who entered the case more than 19 years ago (and for the express purpose of representing the defendant on appeal), now to find new lawyers, who will need further extensions in order to analyze the pleadings from the last 20 years worth of litigation before they actually can file the brief.

Gordon

---

**From:** Thomas Huff <thuff@law.gwu.edu>
**Sent:** Wednesday, September 18, 2024 12:19 PM
**To:** Kromberg, Gordon (USAVAE) <GKromberg@usa.doj.gov>
**Cc:** Jonathan Turley <jturley@law.gwu.edu>; Attias, Joseph (USAVAE) <JAttias@usa.doj.gov>
**Subject:** Re: [EXTERNAL] United States v. Al-Timimi, No. 14-4451 (4th Cir.) -- motion for 30-day extension

Gordon,

I am attempting to be as straightforward as possible, and so what I can represent is that the sole purpose of our 30-day extension request is to secure substitute counsel for our client because recent changes in our personal circumstances have made it impossible for us to brief and argue the appeal. My circumstances are that I entered a full-time doctoral program on July 1 -- a program that I applied to last year at a time when the case had been inactive for years. Jonathan's circumstances are private, but I am familiar with them and can represent that no reasonable person would take issue with them.

I expect that substitute counsel will need to review the record, and at least one attorney will need to possess or obtain an appropriate security clearance. I can't take a position that binds future counsel because I can't know those logistics; I can only tell you the reasons that we seek the extension that we are requesting today. (The reason I asked if this case still has an assigned Classified Information Security Officer is because we would like to have a point of contact for substitute counsel to work out any clearance issues as efficiently as possible. We have been unable to reach Maura, and a quick google search suggests that she might now be at FISA.)

You mentioned a need to be skeptical. I can send you documentation of my program if you are skeptical of my reasons.

Or maybe I am just misinterpreting you. Is your objection that extensions will indefinitely delay the appeal? Can we reach an agreement that we will commit to securing substitute counsel during this first extension period, and that if we fail to do so, we can expect you to oppose the next request?

Tom

On Wed, Sep 18, 2024 at 9:17 AM Kromberg, Gordon (USAVAE) <Gordon.Kromberg@usdoj.gov> wrote:

> Thomas,
>
> You can represent that we do not oppose the request to extend the briefing schedule for 30 days to the extent that the purpose of the extension is to enable you to actually file a brief by October 31st - - but we oppose the request to extend the briefing schedule (after having consented to the last 12 similar such requests) to the extent that the purpose of the extension is to enable you to find new lawyers who will need further extensions in order to analyze the pleadings from the last 20 years worth of litigation before they can actually file the brief.
>
> Thanks,
>
> Gordon
>
> **From:** Thomas Huff <thuff@law.gwu.edu>
> **Sent:** Tuesday, September 17, 2024 8:27 PM
> **To:** Kromberg, Gordon (USAVAE) <GKromberg@usa.doj.gov>
> **Cc:** Jonathan Turley <jturley@law.gwu.edu>; Attias, Joseph (USAVAE) <JAttias@usa.doj.gov>
> **Subject:** Re: [EXTERNAL] United States v. Al-Timimi, No. 14-4451 (4th Cir.) -- motion for 30-day extension
>
> Hi Gordon,
>
> I think the most direct answer I can give you is that the case was largely dormant from 2020 to 2024, our circumstances have significantly changed over that four-year period, and consequently we need to find substitute counsel. Had the district court resolved our outstanding motions at virtually any other time, I would have enthusiastically immersed myself in the task of litigating all of the outstanding issues to the Fourth Circuit on the merits. But the district court resolved the motions on July 18 of this year -- 17 days after I started a doctoral program that requires me to be in a lab full time. Likewise, Jonathan has now represented Al-Timimi pro bono for almost 20 years, but has had to reduce his litigation practice recently due to personal circumstances. Thus, as a practical matter, we are simply unable to brief and argue an appeal at this time.
>
> I am far from happy about this reality. Although the prolonged nature of the remand was outside of our control, I think we pretty diligently sought to maximize opportunities to resolve other questions in the interim. After the Supreme Court decided *Johnson*, for example, we moved the Fourth Circuit to expand the remand order so that we could litigation the 924(c) issues. We then filed motions for acquittal that went through multiple rounds of briefing. Every time the Supreme Court decided a new 924(c) case, we immediately alerted the district court. We additionally sought leave (in an unopposed motion) to challenge Counts 9 and 10. When the Supreme Court decided *Taylor* in 2022, I filed a five-page notice asking the district court to resolve our motions and grant leave to litigate Counts 9 and 10. See Dkt. No. 542 at 5. All of our litigation work was pro bono, without the resources of a law firm, and sometimes at significant personal

expense. It was motivated solely by our desire to have several complex legal issues resolved on the merits in the interest of justice. I think both you (and your former colleague Daniel) have acknowledged the complexity of some of that briefing. I thought it was consistently substantive and professional on both sides.

In the immediate term, we are actively attempting to reach a retention agreement with substitute counsel, and we are seeking a 30-day extension to accommodate that process. I share your view that it is in everyone's best interest for the case to proceed to the merits, and I can represent that we have never discussed a plan to delay the resolution of the appeal. If you look at my actions at the district court, I think we pretty consistently attempted to press every issue we could on the merits. I also plan to stay involved with substitute counsel (should they have me) to facilitate an efficient resolution of the appeal.

I agree that you've been accommodating and professional in the past about things like extension requests -- though I also think/hope that sense of professionalism has gone both ways. (E.g., I've always been happy to pass along copies of transcripts or portions of the record that you didn't have in your files.) I think our request here is pretty reasonable given the circumstances.

Having said all of that, could you please let me know the government's position? Obviously we would prefer an unopposed motion. If you are willing to consent to the motion but would like to forward a statement that expresses any concerns or conditions you have, I would be happy to include it verbatim (as I think I've done in the past.)

Best,

Tom


On Tue, Sep 17, 2024 at 6:43 PM Kromberg, Gordon (USAVAE) <Gordon.Kromberg@usdoj.gov> wrote:

> Thomas,
>
> Congratulations on your doctoral program.
>
> Jonathan was notified by the Fourth Circuit that Timimi's appellate brief was originally due on November 29, 2005. Upon motions filed by Jonathan, its due date was first extended to December 13, 2005, and then to January 17, 2006, and March 20, 2006. On April 25, 2006, the case was remanded to the district court to consider a variety of discovery issues.
>
> Once Judge Brinkema disposed of the discovery motions in 2014, the appeal was given a new number, and the Fourth Circuit set Timimi's brief to be due on September 10, 2014.
>
> Then, upon motions filed by Jonathan (or you, who entered your appearance in January 2015), the brief's due date was first extended to December 1, 2014, and then to January 5, 2015, February 5, 2015, March 9, 2015, April 8, 2015, May 8, 2015, June 8, 2015, July 8, 2015, and August 24, 2015.

Correct me if I am wrong, but I believe that I consented to each of those 12 separate motions to extend the briefing schedule.

As reflected in the messages appended below, in March 2015, you contacted me about the joint appendix. That same month, you (or Jonathan) moved for leave to file a longer brief.

I cannot help but think that you had by that time prepared a brief that encompassed all of the issues that had arisen by that time.

Then, on June 29, 2015, you (or Jonathan) moved for the case again to be remanded to the district court, for consideration of the "Squad IT-2 Memo" discovery issue - - and then later, the 924(c) issues.

With this background, you can understand why I'm confident that Jonathan has been for nearly 19 years prepared to brief all issues that arose at trial or at sentencing, and that you (or Jonathan) have been similarly prepared for nearly 10 years (at least when you contacted me about the joint appendix and sought leave to file a longer brief) to brief all of the discovery issues that were the subject of the first remand. As I see it, the only issues for which you and Jonathan may not have an appellate brief prepared long ago are the discovery issues regarding the "Squad IT-3 Memo" and the 924(c) issues - - and you certainly have briefed those for the district court over the past eight years.

So, are you telling me that with an extra 30 days you will have a new set of attorneys, who will have looked at the past 20 years-worth of materials, and will be able to file a brief by November 1?

Or, or are you telling me that, with an extra 30 days, you may have another set of attorneys involved, who then will themselves ask for more time to go over the materials and write the brief, on the grounds that they have to catch up on more than 20 years worth of litigation?

Over the last 19 years, I have agreed to 12 separate motions for extension of the briefing schedule. If Timimi were in custody, I likely would agree to more. But since he's out pending appeal, and it obviously is in his interest to drag out the appeal as long as possible, I have to be a bit more skeptical these days. For all I know, maybe the plan is to drag out the briefing schedule until I have retired, and there is no one in the government who remembers the facts of the case . . . .

Gordon

---

**From:** Thomas Huff <thuff@law.gwu.edu>
**Sent:** Tuesday, September 17, 2024 4:59 PM
**To:** Kromberg, Gordon (USAVAE) <GKromberg@usa.doj.gov>
**Cc:** Jonathan Turley <jturley@law.gwu.edu>
**Subject:** [EXTERNAL] United States v. Al-Timimi, No. 14-4451 (4th Cir.) -- motion for 30-day extension

Hi Gordon,

I'm writing because we're planning to file a motion to extend the briefing schedule by 30 days as we continue to work toward retaining substitute CJA counsel.

At present, we've been talking with the Office of the Federal Public Defender (who have expressed interest but have been vetting a potential conflict and some logistical issues) and two firms (who have likewise expressed interest but are vetting some logistical issues). So we seek the extension to work through that process.

(My own conflict is that I began a full-time doctoral program at Georgetown on July 1 -- just a couple weeks before the district court resolved the pending motions -- and have had to reduce my litigation practice. I applied and interviewed for that program last year, at a time when our motions had remained pending for several years.)

Could you please let us know if the government consents to the motion?

Best regards,

Tom

p.s. - One additional question: I gather that Maura Peterson may have retired from DOJ or moved on to other opportunities. Do you happen to know if DOJ has a designated Classified Information Security Officer assigned to this case at present? I think a logistical issue on our end would be putting substitute defense counsel in touch with that Officer to discuss their ability to review non-public portions of the record below.

On Mar 5, 2015, at 5:10 AM, Thomas Huff <thuff@law.gwu.edu<mailto:thuff@law.gwu.edu>> wrote:

Hi Gordon,

I know we haven't met in person, but this is Tom Huff; Jonathan introduced us the other day in his email, and we also briefly exchanged emails over the SAM affirmation. I look forward to working across from you on the appeal.

I'm writing to follow up on the joint appendix issues. I've read your emails and studied over the local rules, and I had a couple of ideas that I hoped might work to our mutual benefit, particularly given some of the issues in this particular. I've outline them below; please let me know your thoughts:

(1) Deferred appendix under FRAP 30(c): Jonathan mentioned this last week, and I wanted to give a couple more details. While the joint appendix is ordinarily filed with the opening brief, the rules also create an exception under FRAP 30(c), which allows the appendix to be deferred until after the briefs are filed. In short, the process works like this:
*
First, all of the briefs (opening, opposition, and reply) are initially drafted and filed without the use of an appendix, citing directly to the record instead. These are known under the rules as the "page-proof" copies, which get filed in electronic format only.

*
After all the briefing period is concluded, we (appellants) then assemble and file the joint appendix based on the briefs plus any additional designations you wish to give us.

14 days after that, the parties re-format their briefs to match the joint appendix (i.e., swapping out the direct record citations for appendix ones), and then re-file them, this time in final paper form with the Court. (And of course, no other edits are permitted under the rules; just the citation updates.)

(For full details, see FRAP 30(c) and Local Rule 31(d)(4); link to latest version here: http://www.ca4.uscourts.gov/docs/pdfs/rules.pdf )

So it's an option that allows both parties to draft their briefs off of the full record, but while still allowing for a focused and useable final appendix for the Court. I thought it might be a particularly good fit for this appeal, given the sufficiency of the evidence arguments on all counts, and also the ongoing declassification review—which might make the record difficult to narrow down at present. I imagine the disadvantage is that we would all have to do a bit of extra work "reformatting" our briefs at the end of the briefing period.

To the extent you are agreeable, this is our preferred approach—and if you have any particular questions or concerns, I would be happy to look into them. We would need to seek leave of the Court for this option, and would hope to have your consent for that. My brief review of the Fourth Circuit docket suggests that unopposed motions are routinely granted.

(2) Full designation of the trial record: Another possible approach would be to simply designate the full trial transcript. However, I suspect this would result in a lengthy appendix, approaching perhaps 3,000 pages, and we're concerned that this might be longer than what the court would prefer. (Also expensive to print.) This is not our current preference, but I was wondering if you would have any particular issue with it.

(3) Narrowing the record now: Finally, we could also go back and forth on designations now. My only concern is that it might be somewhat difficult for either party to commit to all designations at present, given the sufficiency of the evidence arguments and also the ongoing declassification issues. But I am certainly open to pursuing it.

So those are my thoughts. Please forgive my verbosity, but do let me know what you think.

Best regards,

Tom